[No. 25579.   Department Two.   August 15, 1935.]

BESSIE D. LUTON, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *Browder Brown, Assistant,* for appellant.

*Henderson & McBee* and *W. L. Brickey,* for respondent.

STEINERT, J.—This is an appeal from a judgment of the superior court reversing a final order of the joint board of the department of labor and industries and directing the department to restore the claimant to her right to a pension under the workmen's compensation act.

The appeal presents a mixed question of law and fact.  During the period between May 4, 1928, and December 15, 1929, Ed Luton was the marshal of the town of Hamilton.  An ordinance of the town, adopted in 1891, fixed the salary of the marshal at sixty dollars per month.  That ordinance has never been repealed.

[1]Reported in 48 P. (2d) 199.

Owing to the disappearance of its saloons in 1914, the town lost most of its revenues and thereafter was unable to pay its marshal a fixed salary.

At the time that Luton was appointed marshal, an arrangement was made between him and the mayor of Hamilton whereby Luton was to receive for his services five dollars per night for supervising a dance hall in the town, and certain fees for making arrests, and other fees for impounding cattle under an ordinance adopted in 1927. The fees were collected by Luton and retained by him, instead of being paid into the town treasury. Dances were held at the hall one night a week. The amounts thus earned and collected by Luton amounted to thirty-five or forty dollars a month.

A few hours after midnight of Saturday, December 14, 1929, Luton was found dead by the side of one of the main traveled streets in Hamilton. Whether his death was the result of an accident or was caused by foul play has never been determined. As to whether he was engaged in discharging any of his official duties at, or just before, the time of his death, the record is capable of diverse inferences.

A formal "report of accident" was filed with the department by the widow, respondent herein, on January 23, 1930. Pursuant thereto, the department notified the respondent that, if the information contained in the report were true, she would be entitled to make claim for a widow's pension. The respondent thereupon filed her claim, accompanied by the necessary formal proofs and a "report of fatal accident" by the town of Hamilton. That report stated upon its face the facts concerning Luton's employment and the method in which he was compensated. Upon the proofs thus furnished to it, the department, on February 21, 1930, made its formal summary and findings

of fact to the effect that the injury was sustained by the deceased in the course of his employment and while engaged in work within the jurisdiction of the division of industrial insurance. Based upon those findings, the department made its decision allowing the claim and awarding respondent a monthly pension from December 15, 1929. Payments continued regularly for more than two years thereafter.

In July, 1931, the department's attention was directed to the information contained in the original report made by the town of Hamilton, to the effect that Luton, while marshal, was not paid a fixed salary, but was paid in the manner described above. That information had either been previously overlooked by the department or else had not been considered as sufficient ground for holding the claim to be without the scope of the act. At about the same time, the department also discovered from a check of its audit records that, during the time that Luton was marshal, the town of Hamilton had been making its reports to the department under subd. 8-3, class 6 of Rem. Rev. Stat., § 7676(a) [P. C. § 3471], relating to road and street maintenance work, etc., and not under class 49-1, relating to marshals and other salaried peace officers, under which latter classification the claim had originally been allowed. With that situation before it, the department sought the advice of the *Attorney General* as to whether the claim was properly under the act. The advice of the *Attorney General* being unfavorable to a cancellation of the award, the department continued to make the monthly pension payments.

In December, 1933, however, the department, upon its own motion, concluded that Luton did not come within the scope of the workmen's compensation act, because he was not a salaried peace officer within the meaning of that act, and thereupon, without any fur-

ther hearing of the matter, notified respondent that her claim had been rejected and that no further pension payments would be made. The respondent then petitioned for a rehearing before the joint board. The petition was granted, and a rehearing, at which oral and written evidence was introduced, was had April 12, 1934, following which the department made further investigation as to the cause of the accident and death. Pending the decision of the joint board upon the rehearing, the respondent wrote to the department on two occasions in July and August of 1934, inquiring as to the status of her claim. In response to these inquiries, the department wrote to the respondent advising her that it was awaiting a decision by this court in a case that would determine the validity or invalidity of her claim.

It appears that there were then pending in this court three cases involving the question now before us. *Abraham v. Department of Labor & Industries,* 178 Wash. 160, 34 P. (2d) 457; *Powell v. Department of Labor & Industries,* 178 Wash. 699, 34 P. (2d) 459, and *Kloeppel v. Department of Labor & Industries,* 178 Wash. 699, 34 P. (2d) 459. The opinions in those cases were published July 9, 1934. Suffice it to say for the present that those cases were decided adversely to the department. Nevertheless, the joint board, on September 24, 1934, entered an order sustaining the supervisor's former order striking claimant's name from the pension roll. From the order of the joint board, an appeal was taken to the superior court, resulting in a reversal as already stated.

Appellant's sole assignment of error presents the question whether, under the circumstances related, the department had the right to cancel the pension award after it had been allowed and payments made thereon. A similar question was presented and specifi-

cally answered in the *Abraham* case, *supra*. Inasmuch as the opinion in that case discusses the question quite fully, we shall quote therefrom at some length. We said at p. 163:

"Under the express terms of statutory law and in accord with its beneficial purposes, the department has original and exclusive jurisdiction, in all cases where claims are presented, to determine the mixed question of law and fact as to whether a compensable injury has occurred. It is as much its duty in each case to determine whether the workman was within the protection of the act at the time of the injury as it is to determine the fact of injury and extent thereof. The facts as to the nature of the employment are a vital part of each inquiry, and must necessarily be determined before a result can be reached allowing the claim.

"Since the department is the original and sole tribunal with power to so determine the facts, and its findings are reviewable only on appeal, it must follow that a judgment by it, resting upon a finding of fact that the workman was so employed at the time of injury as to be within the act, is final and conclusive upon the department and upon the claimant, unless set aside on an appeal authorized by the statute, or unless fraud, or something of like nature, which equity recognizes as sufficient to vacate a judgment, has intervened. Even in such cases, it would seem that the department would necessarily have to appeal to equity and give opportunity for a full inquiry before its judgment could be vacated."

The principle deduced from this language was that "the department cannot set aside its own judgment, based upon facts necessarily found by it, except upon the broad equitable principle of vitiating fraud." The *Powell* and *Kloeppel* cases, *supra,* decided at the same time and upon identical questions, followed the path of the *Abraham* case.

Upon its face, and by its language, the *Abraham* case is controlling here. The department determined

the mixed question of law and fact in the case at bar, as to whether or not a compensable injury had occurred. The facts as to the nature of the employment having been determined by the department, its findings were reviewable only by appeal, and its judgment, resting upon the findings made, was final and conclusive upon both the department and the respondent, unless set aside on an appeal authorized by the statute, or unless fraud, or something of like nature, which equity recognizes as sufficient to vacate a judgment, has intervened.

It certainly could not be said in this case that any fraud was practiced on the appellant. All of the facts on which appellant now relies were presented by the reports originally filed with it. We have here, at most, a hasty and inconsiderate investigation and attention given the matter by the department. In passing, it may be said that, if any criticism is to be made concerning the department's lack of consideration, the present members of the department are not subject to any aspersion. They are not the persons responsible for what then occurred. However, whatever fault there may have been with respect to the alleged oversight, it is not chargeable to the respondent or to any one acting in her behalf. Nor can it be said that anything done by the respondent was of "like nature" as fraud. There was not even innocent misrepresentation by her, which, if honestly yet mistakenly acted upon, might under certain circumstances have the same effect as though active fraud had been practiced. In short, there was nothing in what respondent said or did that would *vitiate* her claim or the department's original decision thereon.

Appellant seems to recognize the controlling force of the *Abraham* case, but seeks to escape its effect by further contention and argument. It contends

that the point was decided otherwise in *Farr v. Department of Labor and Industries,* 125 Wash. 349, 216 Pac. 20, which was not called to our attention in the *Abraham* case. The appellant also argues that the judgment works an unconscionable wrong and detriment to the proper administration of the workmen's compensation act. The contention and argument may be considered together.

It must be conceded that the *Farr* case does hold that the department of labor and industries, being empowered under Rem. Comp. Stat., §§ 7698 and 7703 [P. C. §§ 3489 and 3493], to establish and put into effect such rules as are necessary for the efficient administration of the industrial insurance act, has the right to revise its original allowance of a claim. It must also be conceded that the *Farr* case was not called to our attention and was not considered in the decision of the *Abraham* case. We have re-examined the record in the *Farr* case, and find much therein to support the conclusion that the result was arrived at because the original allowance was made upon a conception of facts that did not exist at all, and that the true state of facts was not discovered until after the allowance had been made. It also appears that the mistake was corrected before the first pension check was cashed. But if, despite these considerations, it may be said that the two cases are not in harmony with each other, then in so far as there is any inconsistency between them, the *Farr* case must be overruled.

The primary question for decision in the *Abraham* case was the same as the one now before us, and that late decision reflects the mature consideration and judgment of this court upon that question at this time. Unless fraud, or something of like nature which equity recognizes as sufficient to vacate a judgment, has in-

tervened, the findings of the department, followed by a judgment resting thereon, become final and conclusive, reviewable only by appeal. A proper administration of the act requires no wider latitude of power than this. To extend the power of the department beyond that point would, we think, render its final decisions too vague and uncertain to afford any proper protection to the rights of claimants under the act.

The judgment is affirmed.

MAIN, MITCHELL, HOLCOMB, and BLAKE, JJ., concur.