[No. 25868. *En Banc.* July 20, 1936.]

A. J. NIX, *Respondent,* v. THE DEPARTMENT OF LABOR
AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *Browder Brown, Assistant,* for appellant.

*Trumbull, Severyns & Trumbull,* for respondent.

STEINERT, J.—A claim for compensation, filed under
the provisions of the workmen's compensation act,
was rejected by the department of labor and indus-
tries. On appeal to the joint board of the department,
the order of rejection was affirmed. An appeal was
then taken by the claimant to the superior court,
where, after a trial, judgment was entered reversing
the order of rejection and remanding the case to the

[1]Reported in 59 P. (2d) 740.

department for allowance and payment of the claim. From that judgment, the department has appealed.

For several years prior to 1934, respondent, A. J. Nix, was a deputy sheriff in the employ of Jefferson county and, as such, was paid a regular monthly salary by the county. Owing to the fact, however, that the county commissioners, in passing on the sheriff's budget for 1934, did not allow a sufficient appropriation for more than one deputy, respondent was discharged as a regular salaried county officer about the first of that year, and since then he has not received any monthly salary from the county.

After his discharge, however, respondent still retained his commission and thereafter continued as a special deputy for particular assignments, as occasion should arise. Under the plan followed by the sheriff after January 1, 1934, whenever a call came in for a special deputy, the firm or business requesting such deputy was required to pay for his services. At one time during the year 1934, the sheriff had as many as eight such special deputies.

At a place called Four Corners, in Jefferson county, was a dance hall owned and operated by private individuals. The owners of the dance hall, desiring the services of a peace officer on their premises on Wednesday and Saturday nights, when the dances were in progress, made a request of the sheriff for the assignment of a special deputy to that duty. The request was granted, with the understanding that the special deputy was to be paid by the proprietors of the dance hall at the rate of four dollars for each night that he served.

Respondent, at the direction of the sheriff, went out to the dance hall and there completed arrangements with the proprietors for his services and wages. He served in the capacity of special deputy at the

dance hall from January to September, 1934. During the same period, he also acted as a special deputy sheriff for periods of two and five days, respectively, at two industrial plants where he was engaged in doing guard duty during a strike. On those two occasions, he was, likewise, paid for his services by the owners of the plants.

No part of the wages received by respondent during 1934 was ever turned over to the county. It appears, also, that, on several occasions, while respondent was working at the dance hall, particularly on Saturday nights, the sheriff sent him to other places in the county for short periods of time to quell some disturbance or to straighten out some traffic difficulty. These were of minor importance, however, and respondent was not paid anything therefor by the county. It further appears that respondent was not obliged to perform any special duty unless he was to be compensated therefor.

On September 9, 1934, while on duty at Four Corners, respondent endeavored to quell a fight that took place between two individuals just outside the dance hall. After some effort, he succeeded in putting one of the combatants in an automobile. In some way, the car was caused to back up and run over respondent's foot, injuring several of his toes. It was for this injury that the claim was filed.

Respondent's name was not on any pay roll of Jefferson county requiring the payment of assessments into the accident or medical aid funds of the state, nor did the county ever contribute toward or pay into either of those funds any assessment based on the work performed by respondent during 1934.

With these facts before us, we approach the law applicable to the case.

The workmen's compensation act, as origi-

nally enacted, provided relief only for workmen employed in industry and against what is termed extrahazardous employment. Chapter 74, Laws of 1911, pp. 345, 346, §§ 1 and 2, Rem. Rev. Stat., §§ 7673 and 7674 [P. C. §§ 3468, 3469] [after amendment in 1927]. In 1923, the legislature enacted § 7674a [P. C. § 3469a], which provides:

"The work performed by *salaried peace officers* of the state, the *counties,* and the municipal corporations of the state is hereby declared to be extrahazardous within the meaning of the preceding sections, and the state, *county* and municipal corporations as employers, and such *salaried peace officers* as workmen, shall be subject to all the provisions of law relating to the compensation and medical and surgical care of injured workmen and entitled to all the benefits thereof. The employers' payments into the accident fund and medical aid fund shall be made from the treasury of the state, *county* or municipality respectively. The classification and rate of premium shall be fixed by the director of labor and industries, through and by means of the division of industrial insurance, upon the basis of the relation which the risk involved bears to the risks classified in section 7674: Provided, that whenever and so long as by state law, city charter or municipal ordinance, provision is made *for such peace officer* injured in the course of employment, *such officer* shall not be entitled to the benefits of this act and shall not be included in the *pay-roll* of the state, *county* or municipal corporation under this act, and provided further, that *no such peace officer* shall receive compensation except for injuries sustained in the course of his employment as *such peace officer.*" (Italics ours.)

The question before us is whether respondent was a salaried peace officer of the county, within the meaning of the statute, at the time that he sustained his injury. The statute does not cover all peace officers of the county, but only a limited class, namely, *salaried* peace officers. The word "salaried," as therein used,

refers to and qualifies the subsequent noun-phrase, "peace officers of the county," and the section, when read in its entirety, connotes a limitation of its provisions to such peace officers as are properly included in the pay roll of the county. The section does not expressly, nor by implication, include peace officers who draw their compensation from private sources.

At the time that the legislature enacted this section of the statute, there were, and for many years had been, in existence various statutes with reference to the duties of county officers and the method of compensating them, as set forth in volume 5 of Rem. Rev. Stat., Title 26, chapters 16 and 18 (Rem. Rev. Stat., §§ 4155 to 4175 [P. C. §§ 1774 to 1816]; §§ 4200-1 to 4235).

Rem. Rev. Stat., § 4167 [P. C. § 1798], provides that every deputy sheriff shall possess all the power and may perform any of the duties prescribed by law to be performed by the sheriff or by his deputies. By Rem. Rev. Stat., § 4168 [P. C. § 1799], it is made the duty of the sheriffs and of their deputies to keep and preserve the peace in their respective counties, to quiet and suppress all affrays, riots, unlawful assemblies, and insurrections, to serve civil and criminal process, and to apprehend or secure any person for felony or breach of the peace. Rem. Rev. Stat., § 4210 [P. C. § 1603], provides that county officers shall receive, according to their class, salaries for the services required of them by law or by virtue of their office, and that such salaries shall be full compensation for all services of every kind and description rendered by such officers; and that the deputies allowed them shall be paid such salaries as the county commissioners may designate. Rem. Rev. Stat., § 4220 [P. C. § 1610], provides that the salaries of

such officers shall be paid monthly out of the county treasury.

The legislature undoubtedly had these earlier statutes in mind when it enacted Rem. Rev. Stat., § 7674a [P. C. § 3469a], above quoted. If it did have them in mind, then the logical interpretation to be placed on the later statute, § 7674a [P. C. § 3469a], is that it was intended to apply only to such peace officers as were under a continuing employment by the county on a definite salary, payable out of the county treasury, and who at the same time were required to perform any and all duties required by the statute; and not to include those officers who might accept or decline the particular assignment as they saw fit and whose services were not only sporadic, but were paid for by the parties requesting them.

■ The most that can be said for respondent's position is that he was deputized to do special peace duty, and that, being eligible for such duty, he was engaged by private individuals and was paid by them for his services. That, however, did not constitute him a salaried peace officer of the county, within the meaning of the statute.

Before concluding, we should refer to two cases on which respondent particularly relies: *Garney v. Department of Labor and Industries,* 180 Wash. 645, 41 P. (2d) 400, and *Luton v. Department of Labor and Industries,* 183 Wash. 105, 48 P. (2d) 199.

In the *Garney* case, it was held that, where an individual is hired by the county to do "emergency relief work" or "charity work" of an extrahazardous nature, for the county, and paid for from the county's indigent relief fund, the relationship is that of employer and employee, and that the injury sustained in the course of such employment is within the protection of the workmen's compensation act. That case is

not controlling here, for two reasons: (1) There, the injured party was employed by the county to do the work of, and for, the county, and was paid out of the county's own funds; here, although the respondent was doing the work of a peace officer, he was not employed by the county, nor was he paid by the county out of county funds. (2) In the *Garney* case, the injured workman came within the general provisions of the workmen's compensation act by virtue of the fact that he was a *compensated employee* of the county, engaged in extrahazardous work; while here, the respondent could not claim the benefits of the act unless he was a "salaried" employee, as we have already defined that term.

The *Luton* case, *supra,* arose out of a state of facts very similar to those in this case, but the question presented and decided therein was quite different from the question here. In that case, the department had made formal findings, conclusions, and a decision that the injured party came within the act and was entitled to compensation, and thereafter had made regular payments to the petitioner for two years. Later, the department attempted to reverse its decision. The sole question presented on the appeal was whether the department had the right to cancel the pension award after it had been allowed and payment had been made thereon. Upon the authority of three recent preceding cases, we held that the findings of the department, followed by a judgment resting thereon, became final, reviewable only by appeal. In the case before us, the department has not attempted to reverse its decision, but is here asserting its correctness. The situation, therefore, is entirely different.

The judgment is reversed, with direction to the trial court to affirm the order of the joint board.

ALL CONCUR.