[No. 26416. *En Banc.* January 19, 1938.]

MUD BAY LOGGING COMPANY, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

BLAKE and HOLCOMB, JJ., dissent.

[1]Reported in 75 P. (2d) 579.

*The Attorney General, J. A. Kavaney* and *Harry L. Parr, Assistants* (*V. D. Bradeson,* of counsel), for appellant.

*Thos. L. O'Leary,* for respondent.

## ON REHEARING.

SIMPSON, J.—The Departmental opinion in this case appears in 189 Wash. 285, 64 P. (2d) 1054. A rehearing was granted and arguments thereon presented to the court sitting *En Banc* on two subsequent occasions. After a full consideration, a majority of the court adhere to the views expressed in the original opinion.

At the last hearing, there was presented, for the first time, the question of the employer's right to appeal to the courts from the decision of the appellant's joint board. We feel it desirable to state definitely our position on that question.

The legislature of 1911 passed the first workmen's compensation act (chapter 74, Laws of 1911, p. 345). Section one contained a declaration of the police power, at the end of which section it stated, in reference to civil causes of action for personal injuries to workmen,

". . . all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided."

As a reflection of that exception, § 20 of the act, p. 368, provided:

"Any employer, workman, beneficiary, or person feeling aggrieved at any decision of the department affecting his interests under this act may have the same reviewed by a proceeding for that purpose, in the nature of an appeal, initiated in the superior court of the county of his residence. . . ."

In the case of *Brewer v. Department of Labor & Industries,* 143 Wash. 49, 254 Pac. 831, we assumed the employer has the right of appeal. In *Seattle Can Co. v. Department of Labor & Industries,* 147 Wash. 303, 265 Pac. 739, the employer appealed from an order of the department, and its right to appeal was not questioned.

We recognized the right of the employer to appeal in *Hama Hama Logging Co. v. Department of Labor & Industries,* 157 Wash. 96, 288 Pac. 655, stating therein as follows:

"From the order of the department rejecting the claim, the logging company appealed, as was its right under § 8, ch. 310, Laws of 1927, p. 850, to the superior court for Thurston county."

In the case of *State ex rel. Crabb v. Olinger,* 191 Wash. 534, 71 P. (2d) 545, we cited Rem. Rev. Stat., § 7697 [P. C. § 3488], and pointed out that:

"This section provides that any claimant, employer, or other person aggrieved by any order of the department of labor and industries must, before appealing to the courts, apply to the joint board of the department for a rehearing. It is provided that, within thirty days after the determination of the joint board has been communicated to the applicant, an appeal may be taken from an adverse ruling to the superior court."

We further observed:

"The workmen's compensation act itself recognizes the employer's interest in the pending claim of one of his employees for compensation, and his right to challenge an order of the supervisor by an application to the board for rehearing. The employer is, of course, vitally interested, because he is a contributor to the fund out of which claims are paid, and his assessments to sustain the fund are materially affected by the allowance of compensation to any of his employees."

In the recent case of *Albrecht v. Department of Labor & Industries,* filed December 8, 1937, 192 Wash. 520, 74 P. (2d) 22, we recognize the right of an appeal by an employer.

Thus, so far as appeals were concerned, the employer and employee were virtually placed upon a parity. It is manifest that no distinction is made between employer and employee, except where an employer appeals from an order made under and by virtue of Rem. Rev. Stat., § 7683 [P. C. § 3477], in which case the employer must furnish a bond that he will fully comply with the judgment.

Notwithstanding a number of amendments, this right of appeal from *departmental decisions* has never been abridged, and the same section as finally amended, being Rem. Rev. Stat., § 7697, provides for appeal from any order, decision or award made by the department, and this right is extended specifically to any employer aggrieved by any such order, decision or award.

As evidence of the legislative intent to allow employers an appeal, we notice the following sections relative to aid for workmen: Rem. Rev. Stat., § 7712 [P. C. § 3501], relative to rating or classification for medical aid; § 7724 [P. C. § 3513], which also relates to medical aid contracts; § 7674 [P. C. § 3469], providing for a hearing to determine whether or not an occupation is extrahazardous; § 7715 [P. C. § 3504], relating to the power to promulgate rules, regulations and practice with the furnishing and care of treatment and services to injured workmen; § 7720 [P. C. § 3509], which deals with appeals from the orders of medical aid boards; and § 7676 [P. C. § 3471], relating to classification of premium ratings, all contain provisions recognizing the right of the employer to appeal to the courts and in each of these sections reference is made to the general statute, § 7697, *supra,*

providing the method of appeal. Thus there are seven sections providing for appeals by employers, one, § 7697, being general in character and the remaining six being specific.

■ It is urged that the only right of appeal given to an employer is by virtue of the Laws of 1917, chapter 120, p. 477, § 2, Rem. Rev. Stat., § 7676. This section, it will be observed, refers to the fixing of rates to be charged the employer, the rates being based to a large extent on the number and kind of accidents that occur to the workmen of such employers.

Should it be held that the employer has no right of appeal except by the provisions of the above section, he would find himself charged with certain accidents which would add to his cost experience without being given an opportunity to contest the same. Certainly, the employer could not dispute the rates under Laws of 1917, chapter 120, p. 474, on the ground that the original charge to his cost experience on account of his workmen having been injured was improper. Under such circumstances, the department would be in a position to answer that the claims had been allowed after a proper hearing and the amounts so allowed paid to the workmen.

■ A claim passed upon by the department becomes final after the time for appeal has expired. If an appeal is not prosecuted within the time fixed by statute, the appeal will not lie. *Nafus v. Department of Labor & Industries,* 142 Wash. 48, 251 Pac. 877.

In *Ek v. Department of Labor & Industries,* 181 Wash. 91, 41 P. (2d) 1097, we said:

"The rejection of the claim by the department was a final judgment; and when the time for appeal expired, that judgment became a complete and final adjudication, binding not only upon the then claimant Charles Ek, but also upon all persons who might thereafter claim by, through or under him. Therefore, as to the

workman and as to his wife, who afterwards became his widow, and as to all others who might so claim, that adjudication finally and judicially established that there was no ground for recovery under the act."

In *Luton v. Department of Labor & Industries,* 183 Wash. 105, 48 P. (2d) 199, this court stated:

"The facts as to the nature of the employment having been determined by the department, its findings were reviewable only by appeal, and its judgment, resting upon the findings made, was final and conclusive upon both the department and the respondent, unless set aside on an appeal authorized by the statute, or unless fraud, or something of like nature, which equity recognizes as sufficient to vacate a judgment, has intervened."

In *Albrecht v. Department of Labor & Industries, supra,* we said:

". . . when the joint board hears an appeal on the question presented and makes a final order on the merits of the case, that case is closed."

If an employer was not given the right of appeal from a decision of the appellant's joint board, such decision would then, upon a hearing for the purpose of fixing rates, be held *res adjudicata* as to such claims, and the employer would be bound to have them charged against his cost experience. Such was not the intention of the legislature.

We conclude, therefore, that the employer does have a right of appeal to the courts, and that the opinion of the department in affirming the judgment of the lower court was correct.

STEINERT, C. J., MAIN, BEALS, MILLARD, GERAGHTY, and ROBINSON, JJ., concur.

BLAKE, J. (dissenting)—Believing the decision in this case is destructive of the fundamental principle of the industrial insurance act, in that it relegates the

subject of industrial accidents to the realm of private controversy, I feel it necessary, in dissenting, to set out my views at a length which would be unwarranted in a case of less consequence.

A complete statement of the facts out of which this controversy arose will be found in 189 Wash., at page 285. It will suffice here to say that, while in the course of extrahazardous employment in the service of Mud Bay Logging Company, Jack Matela sustained injuries for which he sought compensation under the industrial insurance act. *Matela v. Department of Labor & Industries*, 174 Wash. 144, 24 P. (2d) 429. Without notice to Mud Bay Logging Company, the department gave Matela classification of permanent total disability, and, pursuant to Rem. Rev. Stat., § 7681 [P. C. § 3475], made a lump sum settlement with him for $1,225. Contending the settlement so made amounted to the taking of its property without due process of law, Mud Bay Logging Company appealed to the joint board of the department, demanding that no charge against its cost experience be made on account of the payment made in settlement with Matela. The petition having been denied, the logging company appealed to the superior court, which entered judgment directing the department to

". . . cancel any charges . . . made against . . . Mud Bay Logging Company, for contribution to the accident fund, by reason of any increase in its experience rating as a result of the payment to Jack Matela . . . pursuant to the order of the joint board . . ., in which order . . . Jack Matela [was] adjudged totally and permanently disabled."

The department appeals.

From the quoted portion of the judgment, it is apparent that this case presents the situation of an employer appealing to the court from an order of the de-

partment awarding compensation to a workman. The question to be determined is: Has an employer the right, under Rem. Rev. Stat., § 7697 [P. C. § 3488], to appeal to the courts from an order of the department awarding compensation to a workman?

So far as pertinent, the statute (Rem. Rev. Stat., § 7697), provides:

"Whenever the department of labor and industries has made an order, decision or award, it shall promptly serve the claimant, employer or other person affected thereby with a copy thereof by mail, which shall be addressed to such claimant, employer or person at his last known address as shown by the records of the department. Any claimant, employer or other person aggrieved by any such order, decision or award must, before he appeals to the courts, serve upon the director of labor and industries, by mail or personally, within sixty days from the day on which such copy of such order, decision or award was communicated to the applicant, an application for rehearing before the joint board of said department . . .

"Within thirty days after the final order of the joint board upon such application for rehearing has been communicated to such applicant, or within thirty days after rehearing is deemed denied as herein provided, such applicant may appeal to the superior court of the county of his residence, but upon such appeal may raise only such issues of law or fact as were properly included in his application for rehearing, or in the complete record in the department. . . . Such appeal shall be perfected by filing with the clerk of the court a notice of appeal and by serving a copy thereof by mail, or personally, on the director of labor and industries."

Our question, however, cannot be answered without consideration of § 4, chapter 74, Laws of 1911, p. 349, as amended by § 1, chapter 104, Laws of 1931, p. 297 (Rem. Rev. Stat., § 7676 [P. C. § 3471]). Before undertaking to construe the section as amended, it is necessary to consider the section as originally enacted and

in the light in which it had been construed by this court and the supreme court of the United States. The section bears the caption, "Schedule of Contribution," and opens with the following declaration:

"Insomuch as industry should bear the greater portion of the burden of the cost of its accidents, each employer shall, prior to January 15th of each year, pay into the state treasury, in accordance with the following schedule, a sum equal to a percentage of his total pay roll for that year, to-wit: (the same being deemed the most accurate method of equitable distribution of burden in proportion to relative hazard): . . ."

In passing, I may say that this declaration has been carried into every amendment of the section.

Then follow rates of contribution which are inflexible but subject to "future adjustment by the legislature." Industries are divided into forty-seven classes, but "classifications [are subject] to rearrangement following *any relative increase or decrease of hazard shown by experience.*" The character of the contribution imposed under this section was defined in *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, as follows:

"It is the consideration which the owners of the industries pay for the privilege of carrying them on. It is, therefore, in the nature of a license tax, and can be justified on the principle of law that justifies the imposition and collection of license taxes generally. In this state, such taxes may be imposed, either as a regulation or for the purposes of revenue, the only limitation upon the power being that such taxes when imposed on useful trades and industries shall not be unreasonable, and if a class of trades or industries is selected from the whole, and the tax imposed upon the class selected alone rather than upon the whole, that there be some reasonable ground for making the distinction. . . .

"The sums exacted from the several industries named we think may be treated as partaking both of the nature

of a license for revenue and regulation; as such, however, we find nothing in the principle inimical to either the state or Federal constitutions."

And it was upheld as such in the face of the contention that it amounted to a taking of property without due process of law, in that it rested an equally heavy hand upon the careful and careless employer—requiring the same measure of contribution from the one who had no, or few, accidents and the one who had many.

It is to be noted that the opinion is rested wholly upon the taxing and police power. The court did not, in sustaining its position, resort to the provision of the section designed to meet the suggested objection, namely, that the

". . . rates . . . are subject to future adjustment by the legislature, and the classifications to rearrangement following any relative increase or decrease of hazard shown by experience."

This idea of conforming rates to accident experience was more clearly expressed in the amendment of § 4, chapter 74, Laws of 1911, p. 349, found in § 1, chapter 188, Laws of 1915, p. 674. In that amendment, it is provided:

"In that the intent is that the fund created under this section shall ultimately become neither more nor less than self-supporting, exclusive of the expense of administration, the rates named in this section are subject to future adjustment by the industrial insurance department, in accordance with any relative increase or decrease in hazard shown by experience, and if in the judgment of the industrial insurance department the moneys paid into the fund of any class or classes shall be insufficient to properly and safely distribute the burden of accidents occurring therein, the department may divide, rearrange or consolidate such class or classes, making such adjustment or transfer of funds as it may deem proper."

The section as thus amended (as well as the act as a whole) was again made the subject of attack. *State v. Mountain Timber Co.*, 75 Wash. 581, 135 Pac. 645, L. R. A. 1917D, 10. Again the court upheld the act, and sustained compulsory contribution to the accident fund as an occupational tax. Through Judge Chadwick, the court there said:

"The legislature has adopted the *idea* of industrial insurance, and seen fit to make that idea a workable one by putting its execution, as well as its administrative features, in the hands of a commission. It has abolished rights of actions and defenses and in certain cases denied the right of trial by jury. The legislature has said to the man whose business is a dangerous one and the operation of which may bring injury to an employee, that he cannot do business without waiving certain rights and privileges heretofore enjoyed, and it has said to the employee that, inasmuch as he may become dependent upon the state, that he must give up his personal right of contract when about to engage in a hazardous occupation and contract with reference to the law. These demands are the fundamentals of our industrial insurance law. If the law is not administered as therein provided, it is not likely that a compulsory law such as it is could ever be adequately administered; for, aside from its humane purpose, it was adopted in order that the delay and frequent injustice incident to civil trials might be avoided.

" 'The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable.' Laws 1911, page 345.

"To uphold the law in the sense of sustaining the *idea* of industrial insurance, and to deny the right of executing it without the intervention of the courts, would throw us back on the original ground and we should then, if consistent, hold the *idea* of industrial insurance to be beyond the limit of the police power."

That case was appealed to the supreme court of the United States, which upheld the act in all particulars,

and specifically adopted the view of this court with respect to the character of the contributions exacted of employers and with respect to the power of the state to administer the fund. *Mountain Timber Co. v. Washington*, 243 U. S. 219, 37 S. Ct. 260, Ann. Cas. 1917D, 642. Speaking for the court, Mr. Justice Pitney said:

"We are clearly of the opinion that a State, in the exercise of its power to pass such legislation as reasonably is deemed to be necessary to promote the health, safety, and general welfare of its people, may regulate the carrying on of industrial occupations that frequently and inevitably produce personal injuries and disability with consequent loss of earning power among the men and women employed, and, occasionally, loss of life of those who have wives and children or other relations dependent upon them for support, and may require that these human losses shall be charged against the industry, either directly, as is done in the case of the act sustained in *New York Central R. R. Co. v. White, supra* [243 U. S. 188], or by publicly administering the compensation and *distributing the cost among the industries affected by means of a reasonable system of occupation taxes.* The act cannot be deemed oppressive to any class of occupation, provided the scale of compensation is reasonable, unless the loss of human life and limb is found in experience to be so great that if charged to the industry it leaves no sufficient margin for reasonable profits. But certainly, if any industry involves so great a human wastage as to leave no fair profit beyond it, the State is at liberty, in the interest of the safety and welfare of its people, to prohibit such an industry altogether.

"To the criticism that carefully managed plants are in effect required to contribute to make good the losses arising through the negligence of their competitors, it is sufficient to say that the act recognizes that no management, however careful, can afford immunity from personal injuries to employees in the hazardous occupations, and prescribes that negligence is not to be determinative of the question of the responsibility of the employer or the industry. Taking the fact that ac-

cidental injuries are inevitable, in connection with the impossibility of foreseeing when, or in what particular plant or industry they will occur, we deem that the State acted within its power in declaring that no employer should conduct such an industry without making stated and fairly apportioned contributions adequate to maintain a public fund for indemnifying injured employees and the dependents of those killed, irrespective of the particular plant in which the accident might happen to occur. In short, it cannot be deemed arbitrary or unreasonable for the State, instead of imposing upon the particular employer entire responsibility for losses occurring in his own plant or work, to impose the burden upon the industry through a system of occupation taxes limited to the actual losses occurring in the respective classes of occupation." (Italics mine.)

So, at this stage in the development of our industrial insurance *idea*, it is clear that the employer could make no complaint of the *tax* imposed upon him, in the absence of discrimination and arbitrary classification. For no appeal to the courts was provided.

But the idea of readjusting rates and rearranging classifications to conform to loss or accident experience continued to develop. In the amendment of 1917 (Laws of 1917, chapter 120, § 2, p. 477), we find the idea expressed in the following language:

"The industrial insurance commission shall on or before the 30th day of September, 1917, and semi-annually thereafter make corrections of classifications as between classes of industries if and as experience shall show error or inaccuracy therein, and, under and conformably to the foregoing rule of classification and premium rating, shall at the same time lower the premium rate of any establishment or plant if and as experience shall show it to maintain such a high standard of safety or accident prevention as to differentiate it to that extent from other like establishments or plants, or shall raise the premium rate of any establishment or plant if and as experience shall show it to maintain so low a standard of safety or accident pre-

vention as to justly warrant its being subjected to that extent to a greater contribution to the accident fund."

And in this act, for the first time, we find a right accorded to the employer to challenge in the courts his rating or classification as fixed by the legislature, or, latterly, the industrial insurance commission or department, the amended section (1917) further providing:

"From the original classification or premium rating or any change made therein any employer claiming to be aggrieved may upon application, have a hearing before the industrial insurance commission upon notice to the interested parties and in the manner provided in section 6604-20 [Rem. & Bal. Code] a review by the courts."

Section 6604-20, Rem. & Bal. Code, appeared as § 20 of the original act, and has been carried forward, amended in particulars with which we are not concerned, as Rem. Rev. Stat., § 7697, from which I have quoted.

This amendment (Laws of 1917, chapter 120, § 2, p. 477), makes it clear that the employer did not, prior to 1917, have any right of appeal, under the latter section (§ 6604-20, Rem. & Bal. Code), from any order of the department affecting his classification or the rate of contribution imposed upon him. The right of appeal granted in the 1917 amendment of § 4, chapter 74, Laws of 1911, p. 349, clearly confers the right only to appeal from the semi-annual "corrections of classifications" and "premium rate." In other words, the employer was given the right of appeal to protest his classification or to show that he was entitled to a lower rate than other employers in the same class, by showing that in his plant he maintained

". . . such a high standard of safety or accident prevention as to differentiate it to that extent from

other like establishments or plants,. . . ." (Italics mine.)

Surely, up to this time the change in the method of levying the "license tax" and the granting of a right of appeal from the order of levy wrought no fundamental change in the *"idea* of industrial insurance," as conceived by the legislature in the act of 1911, and interpreted by this court in *State ex rel. Davis-Smith Co. v. Clausen, supra,* and *State v. Mountain Timber Co., supra,* and by the supreme court of the United States in *Mountain Timber Co. v. Washington, supra.* Briefly, the *"idea* of industrial insurance" conceived by the legislature and interpreted by the courts in those cases was this: That extrahazardous industry must bear the cost of injury and death of workmen; that, as a condition precedent to the right to engage in extrahazardous industry, the employer must pay a license or occupation tax; that the revenues derived from this license tax are subject to administration by the state.

True, this court has since described the revenues as a "trust fund." But they are a "trust fund" only in that the *"idea* of industrial insurance" imposes upon the state the moral and legal obligation to use the revenues for the declared purpose for which it collects them. The employer is in no sense a *cestui*, and he cannot (at least as long as the funds are being used to carry out the "idea of industrial insurance") challenge the state's administration of them by appeal to the court. Nor, unless the legislature has, in the amendment of § 4, chapter 74, Laws of 1911, p. 349, by § 1, chapter 104, Laws of 1931, p. 297, abandoned the "idea of industrial insurance" so forcefully expounded by Judge Chadwick in the *Mountain Timber Co.* case, *supra,* has the employer now any right to appeal to the court from any

order of the department made in due course of administration of the accident fund.

The 1931 amendment provides in greater detail a method for "adjustment of rates" and "rearrangement of classification." As we have seen, the section (§ 4, chapter 74, Laws of 1911) has, from the beginning, contemplated the arrangement of classification on the basis of comparative hazard, and the "adjustment of rates of contribution" within the classification on the basis of comparative safety standards in plant operation. Briefly, § 4, as amended by § 1, chapter 104, Laws of 1931, provides that, prior to the first day of January each year, the department shall "determine for each class and/or sub-class a basic premium rate for the ensuing calendar year." In fixing the basic rate of premium, the department is directed to take into consideration, first, the cost experience of each class and subclass over the two year period immediately preceding September first of the year in which the basic rate is being fixed; second, the then condition of each class and subclass account. It is then provided:

"The department . . . shall also . . . determine the percentage of the payroll to be paid into said accident fund during the ensuing year by each employer to be credited to each class and/or sub-class account applicable to the employer's operations of business, and in so doing shall take into consideration the average cost experience of each employer for each one-hundred dollars of payroll in each such class or subclass over the two year period immediately preceding September first of the year in which the percentage rate is being determined, and in so computing the cost experience of any employer the fixed sum of four thousand dollars ($4,000) shall be charged against his experience for each injury resulting in the death or total permanent disability of a workman instead of the actual cost to the accident fund of such injury. The actual rate or per cent of payroll which any employer shall be required to pay for the accident fund shall be twenty-five

per cent (25%) of the basic rate, plus seventy-five per cent (75%) of the employer's cost rate for each one hundred dollars ($100) of payroll over the two year period next preceding the then last September first, but in no case shall the total rate exceed one hundred seventy-five per cent (175%) of the basic rate."

The result of this provision is to more nearly require each employer to bear the cost of accidents in his own plant—to fix his rate of contribution in accordance with the high or low (as the case may be) standard of safety in his plant operation. I find nothing in the section as amended to indicate a purpose of the legislature to abandon the *"idea* of industrial insurance." Nor do I find anything in the section as amended to indicate that the legislature conceived the contribution exacted to be of any different character than it was held to be under the original act, namely, a license tax. That the legislature still conceived the contribution to be a license tax is evident from the direction to the department to "take into consideration . . . the then condition of each class and sub-class account." From this, it is clear that the state was exercising its sovereign power of taxation to meet the necessities of the various accounts of the "accident fund." The section as amended goes no further than to classify the taxpayer by a different method than theretofore provided. The basic principle of industrial insurance is maintained, and the employer (taxpayer) has no ground for complaint, if the basis of classification and contribution is reasonable. *State ex rel. Davis-Smith Co. v. Clausen, supra; State v. Mountain Timber Co., supra.*

There can be no doubt that the basis of classification is reasonable. Surely, if it is not unreasonable to exact the tax from proprietors of "carefully managed plants . . . to contribute to make good the

losses arising through the negligence of their competitors" *(Mountain Timber Co. v. Washington, supra),* it cannot be unreasonable to exact contribution from the employer on the basis of the standard of safety by which his own plant is operated. Consequently, since the contribution retains the character of a license tax, and since the basis of classification among taxpayers is reasonable, there is no violation of the constitutional guaranty of uniformity and equality in taxation, nor of that prohibiting the taking of property without due process of law.

Appeal to the courts in taxing processes is a matter of grace, not of right. Unless it is found in the statutes, it does not exist. *Yakima Amusement Co. v. Yakima County,* 192 Wash. 174, 73 P. (2d) 519. Not until 1917, as we have seen, was the employer granted the right of appeal to the courts from orders affecting the rate of contribution. Now, just what is the right of appeal then granted? The statute is explicit:

"From the original classification or premium rating or any change made therein, any employer claiming to be aggrieved may upon application have a hearing before the joint board created by the administrative code upon notice to the interested parties, and in the manner provided in section 8 hereof, a review by the courts." Laws of 1931, chapter 104, § 1, p. 297.

Clearly, the only right of appeal granted is from the order to be made by the department prior to January first each year, fixing the class and individual rates of contribution to the accident fund. What scope a hearing upon such an appeal might take, we are not now called upon to discuss, for this is not such an appeal. It is an appeal from the order of the department awarding compensation to a workman. To my mind, there is no authority to be found in the statute for such an appeal as this. And it is quite obvious why the legislature

has never provided for such an appeal by the employer from orders of the department awarding compensation to workmen. Such a process would defeat the very "*idea* of industrial insurance," which is to withdraw from the courts jurisdiction over controversies between employer and employee arising out of industrial accidents—to the end that there be "sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents." Laws of 1911, chapter 74, § 1, p. 345.

By this decision, in according employers the right of appeal to the courts from orders awarding compensation to workmen, the court has turned the clock back more than twenty-five years, and has made the subject of industrial accidents again a matter of private controversy between employer and employee—with all the attendant uncertainties and delays in adjusting compensation, which the act avowedly purposed to obviate.

I dissent.

HOLCOMB, J., concurs with BLAKE, J.