[No. 26853.  Department One.  April 14, 1938.]

MAURICE THOMPSON, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

[1]Reported in 78 P. (2d) 170.

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*Ward W. Roney (Raymond D. Ogden, Jr.,* of counsel), for respondent.

GERAGHTY, J.—The adjutant general of the national guard made application to the department of labor and industries to have the personnel of the guard, both enlisted and commissioned, accorded the benefits of the workmen's compensation act.

In support of his application, he alleged that the officers and enlisted men of the guard are employees of the state and engaged in a dual capacity, that is, as state militia and as peace officers; that, in either capacity, they are engaged in extrahazardous employment within the intent and meaning of the act. He states that, in his opinion, the activities of members of the guard are embraced within the classes of work enumerated as extrahazardous by the definition contained in Rem. Rev. Stat., § 7674 [P. C. § 3469]; and, in any event, the duties of the guard are extrahazardous and should be so expressly determined. As an alternative, in case his application for relief under § 7674 be denied, the adjutant general declares his election to have the guard come under the act pursuant to its elective provisions, Rem. Rev. Stat., § 7696 [P. C. § 3487].

The director of labor and industries informed the adjutant general by letter of the department's determination, as follows:

"As the law is written at present, it will be impossible for this department to accede to your request.

"I have had this matter investigated thoroughly, having submitted it to the attorney general, who, likewise, is of the opinion that there is no provision, under the state industrial insurance law, for the Washington national guard."

From this decision, the adjutant general appealed to the joint board of the department. The joint board, after hearing, affirmed the action of the department. On appeal to the superior court of Thurston county, the order of the department was reversed and the application of the adjutant general remanded to the department, with direction to proceed forthwith in accordance with the prayer of the petition. From the judgment of the superior court, the department prosecutes this appeal.

In addition to the error assigned upon entry of the judgment reversing the departmental decision, the appellant assigns error upon the refusal of the court to dismiss the action, for the reason that the adjutant general is neither an employer of the men in the national guard nor authorized by law, or otherwise, to make the application. Error is further predicated upon the denial by the court of the motion to dismiss, for the reason that the legislature has, by Rem. Rev. Stat., § 8507 [P. C. § 3765-53], made exclusive provision for relief of the personnel of the guard, thereby excluding jurisdiction of the department over the matter.

We find nowhere in the workmen's compensation act any specific reference to the national guard or its personnel. On the contrary, since the first legislative session after statehood, the state's military code has contained an express provision for relief of the officers and enlisted men of the guard wounded or disabled while in the service of the state. The existing

provision is embodied in Rem. Rev. Stat., § 8507, reading, in part:

"Every member of the organized militia of Washington who shall be wounded or disabled while on duty in the service of the state shall be taken care of and provided for at the expense of the state, and if permanently disabled shall receive the like pensions or reward that persons under similar circumstances in the military service of the United States receive from the United States: . . . Provided, further, that in the event the organized militia of the state of Washington shall be brought within the provisions of the industrial insurance laws of the state of Washington, the provisions in this section shall be of no force and effect."

The proviso quoted above was added to the section by amendment at the legislative session of 1923. Its language clearly imports that it was not then considered that the guard was under the provisions of the industrial insurance laws of the state. The amendatory act was introduced by the military affairs committee of the senate. Another bill introduced at the 1923 session and recommended for passage by the military committee provided that the governor, as commander in chief of the militia of the state, might, on its behalf and on behalf of the state, file his election with the department of labor and industries to accept the provisions of the workmen's compensation act. The bill was not enacted into law, and no controlling inference is to be drawn from its introduction. It does, however, evidence the opinion held by the military affairs committee as to the necessity of legislative sanction for placing the guard under the act.

At the same session of the legislature, there was enacted an amendment to the workmen's compensation act, Rem. Rev. Stat., § 7674a [P. C. § 3469a], declaring that the work performed by salaried peace officers

of the state, counties, and the municipal corporations of the state should be deemed extrahazardous within the meaning of the preceding sections (7673, 7674 [P. C. §§ 3468, 3469]). It is significant that the legislature did not embrace, by reference or otherwise, the personnel of the guard within the term "peace officers," especially so as the legislature had already, a few days before, revised Rem. Rev. Stat., § 8507, providing separate relief for members of the guard injured in service.

The extrahazardous employments covered by the workmen's compensation act are enumerated in Rem. Rev. Stat., § 7674. Another section of the act, Rem. Rev. Stat., § 7692 [P. C. § 3485], provides that, whenever the state, county, or other municipal corporation shall engage in extrahazardous work, in which workmen are employed for wages, the act shall be applicable thereto. Provision is made in the section for payment by contractors engaged on public work of premiums collectible under the accident and medical aid funds. While this section has been repeatedly amended, the last time at the 1923 session, it, like Rem. Rev. Stat., § 7674a, is silent as to the national guard.

Notwithstanding this legislative history of the industrial insurance law, the respondent contends that service in the national guard is entitled to classification by the director of labor and industries under authority of the following provision of Rem. Rev. Stat., § 7674:

"The director of labor and industries through and by means of the division of industrial insurance shall have power, after hearing had upon its own motion, or upon the application of any party interested, to declare any occupation or work to be extrahazardous and to be under this act."

Stating the question under this head, the respondent says there are but two propositions for determination: (1) Are national guardsmen engaged in extrahazardous employment? (2) Are national guardsmen employees of the state?

Both propositions might be answered in the affirmative, and yet our problem would not be solved. Undoubtedly, the service in the national guard is extrahazardous, but we are here concerned with the question whether the employment is extrahazardous within the intent of the act. The members of the guard may be considered, in a broad sense, as employed by the state to perform their appointed service in the national guard, but the question is: Are they workmen as defined in the act?

The workmen's compensation act, primarily, was intended to provide relief only for workmen employed in industry. In *Nix v. Department of Labor & Industries,* 186 Wash. 651, 59 P. (2d) 740, we said:

"The workmen's compensation act, as originally enacted, provided relief only for workmen employed in industry and against what is termed extrahazardous employment."

The workmen's compensation law was enacted, as Rem. Rev. Stat., § 7673 declares, in the exercise of the police power of the state, for the regulation of its industries and the protection of the workmen employed therein. See *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; *State v. Mountain Timber Co.,* 75 Wash. 581, 135 Pac. 645, L. R. A. 1917D, 10.

In the absence of language evidencing a contrary purpose, the application of the act would be limited to private industry, and not controlling upon the operations of the state itself. *Guarantee Title & Trust Co. v. Title Guaranty & Surety Co.,* 224 U. S. 152,

56 L. Ed. 706, 32 S. Ct. 457; *United States v. California,* 297 U. S. 175, 80 L. Ed. 567, 56 S. Ct. 421. But, as we have seen, the act did, by § 7692, specifically bring within its purview workmen employed for wages by the state, county, or other municipal corporation or taxing district while engaged in any extrahazardous work. And, later, salaried peace officers were brought under the act by appropriate legislation. With these two exceptions made by the legislature itself, the act remains a regulation of private industry.

▌ At the hearing before the joint board, the adjutant general testified:

"Q. Isn't it a fact, General, that practically every conceivable type of trade or work is employed in these various services? A. Practically every one of them. Q. To be more specific, we have janitors, mechanics, electricians, operators of various kinds of instrumentalities—motor vehicles? A. That is correct. . . . They have to dig trenches, using trenching tools. All of those enter into the work of the National Guard."

He said that sometimes, as a part of the training of the guard, it became necessary to cut trees and do minor logging operations and bridge building, and stated they have to simulate these field conditions in order to prepare the guard for that duty when called upon.

But the guard is not engaged in the business of felling trees, or logging, road building, trucking, or any of the classified employments, some of the operations of which are incidentally and casually performed by its members in the course of their service. The principle is definitely established by this court that what an employee does is not alone determinative of his status as a workman under the compensation act. The primary test is whether or not the employer comes within the provisions of the act, that is to say, whether he is engaged in extrahazardous business or industry.

This is necessarily so because, under Rem. Rev. Stat., § 7675 [P. C. § 3470], workman is defined as one "who is engaged in the employment of any employer *coming under this act . . .*" (Italics ours.) It is the business or industry of the employer, rather than the activities of the employee, that determines whether or not the employee is within the provisions of the act. *Guerrieri v. Industrial Ins. Commission,* 84 Wash. 266, 146 Pac. 608; *Parker v. Pantages Theater Co.,* 143 Wash. 176, 254 Pac. 1083; *Edwards v. Department of Labor & Industries,* 146 Wash. 266, 262 Pac. 973; *Carsten v. Department of Labor & Industries,* 172 Wash. 51, 19 P. (2d) 133.

In the *Guerrieri* case, it was held that the operation of a freight or passenger elevator did not make the operator a workman under the act, because the act indicates "a legislative intent to cover classes of business rather than particular pieces or kinds of machinery."

In the *Pantages* case, it was held that, regardless of the degree of hazard in the work of an employee, he did not come within the provisions of the act unless the business or industry of his employer, and in which the employee was engaged, was classified either by the legislature or the department of labor and industries as extrahazardous.

In the *Edwards* case, it was conceded and, in fact, stipulated that the employee operated a motor truck such as was commonly used for heavy hauling, and that the merchandise hauled thereon consisted usually of cartons or cases which, in some instances, weighed as much as two hundred pounds. In answer to the contention that Edwards was a workman under the act, this court held that the business of the employer was that of wholesaling tobacco, cigars, cigarettes, and candies; that, as Edwards only engaged in making

deliveries of his employer's sold merchandise, he was not engaged in the business or industry of transfer, drayage, and hauling; and that, as the employer's business had not been classified as extrahazardous, the employee was not a workman under the act.

In the *Carsten* case, it was specifically held that:

"The service performed by the workman does not in and of itself bring him under the act, but it must be a service performed for an employer who comes under the act."

■ Having determined that it is the business or industry of the employer that is determinative, it cannot be said that the state, in maintaining a national guard, thereby engages in any of the businesses or industries specified in the act, because its members may be called upon to render services that are within the classes enumerated as extrahazardous.

In *In re Ryan v. New York*, 228 N. Y. 16, 126 N. E. 350, a member of the police force of the city of New York, with the rank of patrolman, was detailed to a precinct station. His duties were to guard the prisoners and to keep part of the building in order. While standing on a box, in order to remove an electric light bulb, he was thrown to the floor by the breaking of the box, and injured. The question was whether the case was within the workmen's compensation law. Passing upon the issue, the court, speaking through Judge Cardozo, said:

"Employees of the state or of a municipal corporation have the protection of the statute if they are engaged in one or more of the enumerated hazardous employments. . . . To sustain the award, we must be able to say that the claimant was an employee so engaged, when his injuries were suffered. The argument is that he comes within two groups: group 44 of section 2, which includes 'employment as a keeper, guard, nurse or orderly in a prison, reformatory, in-

sane asylum or hospital, maintained or operated by the state or municipal corporation or other subdivision thereof,' and group 42, which includes the 'maintenance and care of buildings.' We think the claimant has not brought himself within either of these classes. His occupation was not that of a turnkey or keeper. It was not that of the maintenance or care of buildings. His occupation was that of a patrolman, and his position a public office, with functions which, however diverse, have an identity all their own (*Blynn v. City of Pontiac,* 185 Mich. 35; Greater N. Y. Charter, §§ 276, 283). He did not become a turnkey or a janitor because the work to which he had been detailed by his superiors was similar to that which turnkeys and janitors often do. One might as well say that an officer assigned to duty in the mounted squad would be classified as a hostler. . . . Policemen do not change their occupations as they render now this service and now that one in obedience to the call of duty. The occupation remains single through all its multifarious incidents."

The respondent cites the following cases from other jurisdictions in support of his contention: *State v. Industrial Commission,* 186 Wis. 1, 202 N. W. 191; *Baker v. State,* 200 N. C. 232, 156 S. E. 917; *Globe Indemnity Co. v. Forrest,* 165 Va. 267, 182 S. E. 215; *Nebraska National Guard v. Morgan,* 112 Neb. 432, 199 N. W. 557. The decisions in these cases rested upon particular statutes and have no controlling effect here.

In *State v. Industrial Commission,* a national guardsman sustained injuries while at target practice. The state contended that the guard was a part of the Federal army, and that, therefore, the injured guardsman was not covered by the state compensation act. The court held that the guard was part of the Federal army only when in the service of the United States, and at other times was a state organization, and that one of its members injured in the service was entitled

to compensation under the workmen's compensation act. The Wisconsin act defines employer as including the state, each county, city, and other municipal subdivisions. Employee is defined as including

"Every person in the service of the state, or of any county, city, town, village, or school district therein under any appointment, or contract of hire, express or implied, oral or written, except any official of the state, or of any county, city, town, village or school district therein."

In *Baker v. State,* the court held a member of the national guard injured in the service entitled to compensation under the workmen's compensation laws of that state, which defined the word employment as including "employment by the State and all of its political subdivisions"; and the word employee as including,

". . . as to those employed by the State all officers and employees of the State except such as are elected by the people or the General Assembly or are appointed by the Governor."

In *Globe Indemnity Co. v. Forrest,* the court held that a member of the national guard of Virginia injured while on duty at an annual encampment was entitled to compensation under the state compensation act, in virtue of an amendment to the act providing that employers shall include "the State and any municipal corporation within the state . . . using the service of another for pay"; and employee shall include

". . . the officers and members of the national guard, and all officers and employees of the State, except only such as are elected by the people . . ."

In *Nebraska National Guard v. Morgan,* preparatory to a national guard encampment, the adjutant general of Nebraska's national guard employed a number of

carpenters to erect shed kitchens on the encampment grounds. One of the carpenters so employed, at $5.50 per day, was injured while working on the job, and the question was whether he was entitled to compensation under the workmen's compensation act. He was not a member of the national guard. The definition of employer in the compensation act embraced specifically "the state and every governmental agency created by it"; in the term employee and workman was embraced

" . . . every person in the service of the state or any governmental agency created by it, under any appointment or contract of hire . . ."

The case of *Rector v. Cherry Valley Timber Co.,* 115 Wash. 31, 196 Pac. 653, 13 A. L. R. 1247, is also cited by the respondent. In this case, a member of the United States army was transferred from the unit in which he was serving to the spruce production corps, it appearing from information obtained by the superior officers that he was an experienced logger. He reported for duty to the appellant timber company and was put to work. He was injured and sued the appellant for damages. He did the same work as civil employees of the appellant, was paid the same rate of wages and subject to the same superintendence. In reversing a judgment obtained by the respondent in the lower court, this court held that he was a workman in the employ of the timber company within the definition of the compensation act and, therefore, not entitled to sue at common law. This case lends no support to the respondent's contention. While the soldier remained a member of the army, he was, for the time being, detailed to the timber company, under its control, and carried upon its payroll as a workman in an employment under the act.

Our conclusion is that the members of the national

guard cannot be classified as workmen employed by an employer engaged in extrahazardous industry under the act.

We next consider the respondent's contention that the national guard is entitled, under the elective adoption provision of Rem. Rev. Stat., § 7696, to the protection of the act. The section, in part, follows:

"Any employer engaged in any occupation other than those enumerated or declared to be under this act as provided in section 7674, may make written application to the director of labor and industries to fix rates of contribution for such occupation for industrial insurance and for medical aid, and thereupon it shall be the duty of the director of labor and industries through the division of industrial insurance to fix such rate, which shall be based on the hazard of such occupation in relation to the hazards of the occupations for which rates are prescribed. When such rate shall be so fixed such applicant may file notice in writing with the supervisor of industrial insurance, giving ten days' notice of his or its election to contribute under this act, and shall forthwith display in a conspicuous manner about his or its works and in a sufficient number of places to reasonably inform his or its workmen of the fact, printed notices furnished by the department stating that he or it has elected to contribute to the accident fund and the medical aid fund and stating when said election will become effective. *Any workman in the employ of such applicant shall be entitled at any time within five days after the posting of said notice by his employer, or within five days after he has been employed by an employer who has elected to become subject to this act as herein provided, to give a written notice to such employer and to the department of his election not to become subject to this act.* At the expiration of the time fixed by the notice of such employer, the employer and such of his or its workmen as shall not have given such written notice of their election to the contrary shall be subject[s] to all the provisions of section 7673 to 7796, and entitled to all of the benefits thereof: . . ." (Italics ours.)

A casual reading of this section demonstrates its inapplicability to the national guard. While the employer initiates the proceeding, each employee is given a voice and may elect to remain without the provisions of the act. We cannot believe the legislature intended to authorize a procedure under which it would be possible for part of the guard personnel to be within the act and a part without. The objection is reinforced when we consider Rem. Rev. Stat., § 8507, making provision for the guard, with the proviso that it shall be inoperative whenever the guard is brought under the act. The legislature could not have contemplated that the special provision for the guard should remain operative as to some of its members and inoperative as to others who might elect to go under the compensation act.

■ The appellant questions the authority of the adjutant general, in any event, to assume the position of employer of the national guard in making the required written application to the department.

Assuming that, in a broad sense, the personnel of the guard is made up of employees of the state for the performance of the duties imposed upon them, can it be said that, in so important a function as placing the guard under the industrial insurance act, with the financial obligation it entails, the adjutant general is authorized to speak for the state? He does not hire or employ the guard personnel; they enter the service through voluntary enlistment.

Rem. Rev. Stat., § 8463 [P. C. § 3765-2], provides for the governing officers of the state militia:

"The militia of the state not in the service of the United States shall be governed and its affairs administered pursuant to law by the governor, as commander-in-chief, through the adjutant-general's department, which shall consist of the adjutant-general as its executive head, and such other officers and such

enlisted men and civilian employees as the governor shall from time to time prescribe."

Rem. Rev. Stat., § 8474 [P. C. §3765-19], defines the duties of the adjutant general, and provides that "He shall appoint the *civilian* employees of his department and may remove any of them in his discretion." Numerous other duties are assigned to the adjutant general by this section, but we do not find among them any specification that would authorize his acting for the guard in the present application. Throughout the military code, the governor, as commander in chief, is the ultimate authority, and his orders are to be executed through the adjutant general's department. Certainly, if any authority, short of the legislature's itself, voicing its will through appropriate legislation, is authorized to speak for the organized military force of the state, that authority is the governor. The adjutant general acts in subordination of the governor.

From our survey of the course of legislation in respect to the national guard, as well as the workmen's compensation act, it must be apparent that what the adjutant general asks the department of labor and industries to do in this proceeding involves a question of public policy, upon which only the legislature is competent to speak.

Our conclusion is that the department of labor and industries correctly declined to grant the respondent's application. The judgment of the trial court is, therefore, reversed, and the cause remanded, with direction to dismiss.

STEINERT, C. J., MAIN, HOLCOMB, and SIMPSON, JJ., concur.